UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                    PLAINTIFF

v.                                      CRIMINAL ACTION NO. 3:05CR-53-S

DEMETRIUS COHEN                                            DEFENDANT

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter is before the court for consideration of the objections of the defendant, Demetrius Cohen, to the Findings of Fact, Conclusions of Law and Recommendation of the United States Magistrate Judge that his motion to suppress evidence be denied.  The magistrate judge heard evidence and considered pre- and post-hearing briefs on the matter.  The magistrate judge ultimately concluded that the initial stop of Cohen's vehicle and the subsequent search of both its passenger compartment and trunk were proper.  He therefore recommended that the motion to suppress the firearm and ammunition seized from the vehicle be denied.  (DN 33).

There has been no challenge to the findings of fact (DN 33, pp. 1-9) made by the magistrate judge.  The court finds no clear error, and accepts and adopts the findings of fact in their entirety. The court rejects the conclusions of law and proposed disposition of the motion for the reasons set forth herein.

The question of whether the officer's decision to stop Cohen's vehicle comported with the requirements of *Terry v. State of Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1988) is determinative of the motion to suppress.  The following facts relating to the stop, taken verbatim from the magistrate judge's report, are pertinent to our analysis.

The 911 Call.

Events that led to the stop of Defendant's [sic] Cohen's automobile began at 4:52 a.m. on December 17, 2004.  The police dispatcher for the Jeffersontown Police

Department received a hang-up 911 call from an address identified as 8502 Wooded Glen Court.  (DN 28, Transcript of Evidence (T.E.) p. 4).  Such hang-up calls are characterized by the police as "trouble runs."  (Id.)  The dispatcher immediately radioed Officer Eric Pender, a patrol officer with 15 years law enforcement experience, who was on patrol in the area.  (DN 28, T.E. p. 3).

Four minutes after the hang-up 911 call, Officer Pender was approaching Wooded Glen Court, a residential cul-de-sac with six homes.  (Id. at p. 5).  Pender observed a lone automobile turn right from Wooded Glen Court onto Wooded Glen Road and approach his vehicle.  As the vehicle passed, Officer Pender performed a u-turn to make an investigative stop to determine whether the vehicle was coming from the scene of the 911 call.  Officer Pender testified that the Wooded Glen cul-de-sac has only one entrance or exit and that Cohen's vehicle was the only one emerging from the cul-de-sac as he approached.  (Id. at p. 6).

DN 33, p. 2.  The magistrate judge also found facts as to the information Officer Pender *did not* have available to him[1]:

These facts [quoted above] were the only facts available to Officer Pender at the time he decided to make an investigative stop of Defendant Cohen's vehicle.  He had no information from the dispatcher about what had occurred at 8502 Wooded Glen Court to cause the hang-up 911 call.  He had no information that Cohen was a suspect and no description of Cohen or Cohen's vehicle as being involved.  Because Officer Pender was on a "trouble run" he did not know what activity was the basis for the emergency 911 call from 8502 Wooded Glen Court.  In fact, he admitted that he did not see Defendant Cohen's vehicle leave that address.  Pender conceded on cross-examination that Defendant Cohen could have come from any of the homes on the cul-de-sac or even simply have made a wrong turn into the cul-de-sac.  Cohen also could have left Wooded Glen Court that morning for a number of reasons unrelated to the 911 call.  Pender agreed that Defendant Cohen's driving was not indicative of flight or in violation of any state or local traffic regulations.

DN 33, p.12.

The magistrate judge concluded that Officer Pender possessed sufficient facts, taken in the aggregate, along with his knowledge and experience to create a reasonable suspicion of criminal activity justifying the stop of Cohen's vehicle under *Terry, supra.*  We disagree.

The magistrate judge relied in principal part on the case of *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) in concluding that the stop was justified.   We do not

---

[1]The magistrate judge included these facts in his conclusions of law.  We will, however, accept and adopt the paragraph as findings of fact to which there has been no objection.

take issue with the rule of law espoused in *Arvizu* nor with its application to the facts of that case. Rather we conclude that the law applied to the meager facts in the case at bar do not justify the same conclusion as in *Arvizu*.

> In *Terry, supra.*, the United States Supreme Court stated that
>
> in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. This demand for specificity in the information upon which police action is predicated is the central teaching of this Court's Fourth Amendment jurisprudence. [citations omitted]...Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches...

*Terry*, 88 S.Ct. 1880.  *See also, United States v. Ienco*, 182 F.3d 517, 524 (7th Cir. 1999), *quoting, United States v. Sholola*, 124 F.3d 803, 812 (7th Cir. 1997)(even "inspired hunches" do not invest the police with the authority to "stop people at will.")  In *United States v. Sokolow*, 490 U.S.1, 12, 109 S.Ct. 1581, 1588, 104 L.Ed.2d 1 (1989) the Supreme Court reiterated that a suspicion is not reasonable unless officers have based it on specific and articulable facts, citing *Terry, supra.*, *United States v. Brignoni-Ponce*, 422 U.S. 837, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), and *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979).  To detain an individual, officers must have "a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity." *Brown,* 99 S.Ct. at 2641.

In *United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002), the United States Court of Appeals for the Sixth Circuit noted that "The 'reasonable suspicion' determination is ultimately a mixed question of law and fact (or, in other words, an application of law to fact), by which the court determines whether the facts surrounding the officer's determination are of sufficient legal significance to constitute reasonable suspicion."  In this instance, Cohen's vehicle was stopped purportedly on reasonable suspicion that he was engaged in criminal activity.  The Supreme Court has noted that "stopping or diverting an automobile in transit, with the attendant opportunity for a

visual inspection of areas of the passenger compartment not otherwise observable, is materially more intrusive than a question put to a passing pedestrian..." *United States v. Mendenhall*, 446 U.S. 544, 556-57; 100 S.Ct. 1870, 1878; 64 L.Ed.2d 497 (1980). We must ascertain whether specific and articulable facts existed to justify the stop of this vehicle.

Cohen urges that Officer Pender was presented with the equivalent of an anonymous tip which must be corroborated for reliability before it can form the basis for a finding of reasonable suspicion. He cites *Northrop v. Trippett*, 265 F.3d 372 (6th Cir. 2001) in which the Sixth Circuit condemned the stop of Northrop at a Greyhound Bus station that was

> ...based solely on a tip from an anonymous source. The officers knew nothing about the informant. And in giving the tip, the informant only told police that two black males, one wearing a particular type of name brand clothing, were selling drugs in the Greyhound Bus Station. The tip did not further describe Northrop. Nor did the tip provide any predictive information to allow the officers to assess its reliability. Further, the officers did not observe any suspicious behavior that would have justified the stop independent of the tip.

*Northrop*, 265 F.3d at 382.

In this case, the 911 hang-up was treated by the police dispatcher as a "trouble call" and routed to Officer Pender to check out. While this is certainly diligent and commendable police practice, the receipt of a hang-up call is wholly devoid of any specific and articulable information that a crime was occurring, what that crime might be, or who might be involved in such criminal activity. While the receipt of the hang-up may properly have generated further investigation into *whether* a crime had occurred or was occurring, the hang-up itself provided no information. According to the United States, the hang-up must be coupled with the experience of law enforcement that, in such instances, there may be "trouble" at the location from which the call was placed. At best, this elevates the receipt of the hang-up to an articulable hunch of "trouble," in the minds of experienced law enforcement personnel. [2]

---

[2]We specifically decline to describe this as a hunch that "criminal activity may be afoot." To do so would be to read more

(continued...)

The United States would add to the calculus that the hang-up occurred at 4:52 a.m.  This fact adds nothing.  It is only significant in that Cohen was seen driving out of the Wooded Glen Court cul-de-sac approximately four minutes after the hang-up was received.  Inasmuch as the cul-de-sac had only six houses on it, Cohen's exit from the area within minutes of the hang-up might reasonably have led an experienced officer to wonder whether this lone car leaving the area at approximately 5:00 a.m. had any connection to the 911 hang-up.  But as Officer Pender had nothing more than a hunch of possible trouble, he had no basis to suspect that an occupant of this lone vehicle was involved in any criminal activity.  Officer Pender did not observe anything about this vehicle prior to the stop to assist him in ascertaining the purpose of the vehicle's presence in the Wooded Glen neighborhood.  The vehicle was not seen coming from 8502 Wooded Glen Court. The operation of the vehicle was unremarkable.  It goes without saying that the hang-up did not yield a description of Cohen or his car.  Thus Cohen's presence at that moment was noteworthy *only* in that he was driving his vehicle in an area close to the source of a hang-up within a few minutes of the time the hang-up was received.

*Terry* and its progeny require specific and articulable facts justifying a reasonable suspicion that the detainee is engaged in criminal activity.  First, there was no information concerning the occurrence of any criminal activity, law enforcement "trouble" hunches notwithstanding.  We have far less before us than an anonymous tip that criminal activity was allegedly occurring at 8502 Wooded Glen Court.  An actual anonymous tip  would at least have represented that a crime was occurring.  In this instance, the hanging up of a telephone receiver "tipped" the police that there *might* be "trouble" at 8502 Wooded Glen Court which *might* constitute "criminal activity afoot." This is simply not specific and articulable facts suggesting criminal activity.

---

[2](...continued)

into the testimony of record than is warranted.  We do not find that "trouble" is synonymous with "criminal activity."  As the hang-up provided absolutely no information, the dispatch of Officer Pender on a "trouble run" was nothing more than a step in determining *if* there was "trouble," be it criminal activity or otherwise.

Considering in totality all that Officer Pender knew at the time he determined to stop Cohen's vehicle, we must conclude that his observation of Cohen's vehicle did not yield additional facts to further inform him as to the possibility of criminal activity at 8502 Wooded Glen Court. The presence of the vehicle leaving the cul-de-sac made it no more or less likely that criminal activity was afoot. Rather, it offered the possibility that *if* criminal activity was afoot, a person in a vehicle in the vicinity *might* have some connection to it. Officer Pender made nothing more than an educated guess that an occupant of a lone vehicle in the vicinity was in some way connected with whatever might be occurring or might have occurred at the residence from which the 911 hang-up came. We find these suppositions to be too tenuous and attenuated from each other to warrant a finding of reasonable suspicion that Cohen was involved in criminal activity.

Two cases offer some guidance in our analysis. In *Thompson v. Reuting*, 968 F.2d 756, 759 (8th Cir. 1992), an officer received a dispatch of a "suspicious brown Nova car in the vicinity of 48th and Sahler Streets." When he arrived at the intersection, a brown Nova was the only vehicle in the vicinity. The area was known by the officer to be a "high crime" and "low traffic" area. It was dark when the officer received the dispatch, and he was unable to tell how many occupants were in the vehicle, their sex, or race. The United States Court of Appeals for the Eighth Circuit found that the law enforcement officer did not have an objectively reasonable suspicion that occupants of a vehicle were involved in criminal activity. *Id*. at 759. As in the case at bar, the officer in *Thompson* did not see anything in the operation of the vehicle to suggest criminal activity. The dispatch stated only that the vehicle was "suspicious." *Id*. The court stated that

> These facts, as a matter of law, do not establish that [the officer] had an objectively reasonable suspicion that the occupants of the Nova were involved in criminal activity in order to justify stopping it under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), the Supreme Court reaffirmed the principle that "[t]he officer [making a *Terry* stop]...must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." *Id*. at 329, 110 S.Ct. at 2416 (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989))(internal quotations omitted). All of the information available to [the officer]

> was inchoate and unparticularized.  He did not see any violations of the law.  Facts such as being in a high crime area, in the dark, and unable to see the occupants of the car are very general and provide no information about the people in the Nova, much less information indicating that the people may have committed a crime.  The additional information provided by the dispatch does not make up the difference.  A report that a particular car is "suspicious" simply does not indicate whether its occupants may have been engaged in criminal activity.

*Thompson*, 968 F.2d at 759.  We find the same lack of specific articulable facts to suggest suspected criminal activity in the case at bar.  Similar to *Thompson*, the government offered a generalized statement relating to the experience or knowledge of the officer to give credence to the hunch that criminal activity was afoot.  The officers' intuition yielded fruit in both cases.  In *Thompson*, it was discovered that there was an outstanding arrest warrant for one of the occupants of the vehicle.  In the case at bar, a gun and ammunition were discovered in a search of the vehicle.  However,  the later discovery of a ground for arrest begs the question as to whether there existed articulable facts which legally justified the stop.  In *Thompson* it was not enough that the officer knew the area to be a "high crime" and "low traffic" area.  Here, we find that it is insufficient that hang-ups are treated as "trouble runs" worthy of further investigation.

In fact, we find the facts before this court to be even more compelling than those in *Thompson*.  In *Thompson*, the defendant was in a vehicle which was thought to be "suspicious," but the information available to the officer was "inchoate and unparticularized" and thus insufficient to justify the stop of the vehicle.  Thus there was a connection of the defendant to the "suspicious vehicle," as he was a passenger in it.  By contrast, not only were there no facts at all to suggest criminal activity at 8502 Wooded Glen Court, but there was no evidence connecting Cohen or his vehicle to that address.  A hunch that Cohen bore some connection to some possible but unknown criminal activity at 8502 Wooded Glen Court, based upon the proximity of his vehicle in the neighborhood of the residence late at night shortly after a 911 hang-up, falls far short of reasonable suspicion based upon specific and articulable facts.  *Compare, U.S. v. Juvenile TK*, 134 F.3d 899 (8th Cir. 1998)(distinguishing *Thompson, supra.*)

- 7 -

The objections of the defendant, Demetrius Cohen, to the Findings of Fact, Conclusions of Law, and Recommendation of the magistrate judge having been considered, and the court having conducted a de novo review of those portions of the magistrate judge's report (DN 33) to which objection has been made in accordance with 28 U.S.C. § 636(b)(1)(C), and for the reasons set forth herein, **IT IS HEREBY ORDERED AND ADJUDGED** that:

1.   The Findings of Fact of the magistrate judge (DN 33, pp. 2-9; p. 12, 1st full paragraph) are **ACCEPTED AND ADOPTED IN THEIR ENTIRETY**.

2.   The Conclusions of Law and Recommendation of the magistrate judge (DN 33, pp. 9-25) are **REJECTED**, and the Conclusions of Law contained herein will constitute the ruling of the court.

3.   The motion of the defendant, Demetrius Cohen, to suppress evidence (DN 22) is **GRANTED**, and the evidence seized as a result of the stop and search of the defendant's vehicle is **SUPPRESSED**.